UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Nadezda Montgomery
and I.V.

  v.         Civil No. 10-cv-536-JL
              Opinion No. 2011 DNH 023
Scott Montgomery


**OPINION AND ORDER**

  This case raises the question of whether this court should
abstain from hearing an action to enforce a federally created
contractual obligation between the parties to an ongoing divorce
proceeding in state court.  The plaintiffs, Nadezda Montgomery
and her minor son, I.V., have sued Nadezda's husband, Scott
Montgomery.  They seek specific performance of an "Affidavit of
Support" that Scott swore out on their behalf to enable them to
become lawful permanent residents of the United States after
immigrating from Russia.  See 8 U.S.C. § 1182(a)(4)(C)(ii).

  The parties do not question that this court has subject-
matter jurisdiction under 28 U.S.C. § 1331, because the
plaintiffs' claim arises under federal law--namely, 8 U.S.C.
§ 1183(e)(1), which provides that "[a]n action to enforce an
affidavit of support . . . may be brought against the sponsor in
any appropriate court by a sponsored alien, with respect to
financial support" (formatting altered).  See, e.g., Cheshire v.
Cheshire, No. 05-453, 2006 WL 1208010, at *1 (M.D. Fla. May 4,

2006); Stump v. Stump, No. 04-253, 2005 WL 2757329, at *1 (N.D. Ind. Oct. 25, 2005); Tornheim v. Kohn, No. 00-5084, 2002 WL 482534, at *2 (E.D.N.Y. Mar. 26, 2002).

Instead, Scott has moved to dismiss,[1] arguing that, under Younger v. Harris, 401 U.S. 37 (1971), this court should abstain from exercising its jurisdiction in light of his pending divorce action against Nadezda in the Derry Family Division of the Rockingham County Superior Court, In re Montgomery, No. 2010-M-99 (N.H. Super. Ct. Fam. Div. Feb. 17, 2010).  Following oral argument, the motion is denied.  Because this is an action to enforce an obligation that exists independently of the Montgomerys' marriage, it will not interfere with the pending divorce proceedings so as to warrant Younger abstention.  Nor does the fact that Nadezda first attempted to enforce the affidavit in the divorce proceedings, which Scott emphasizes, justify abstention under Younger--or even Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), which Scott has not invoked, but which this court has considered on its own initiative anyway.

---

[1]While Scott's motion invokes Fed. R. Civ. P. 12(b)(6), governing dismissals for failure to state a claim, he is actually asking the court to dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

## I.   **Background**

Nadezda alleges that she and I.V. were living in Russia when
Scott, a resident of Derry, New Hampshire, asked them to emigrate
"to get married and build a family with him in America."  Nadeza
agreed.  She and I.V. arrived in the United States in June 2008,
and Nadezda and Scott were married the next month.  Scott later
filed petitions with the United States Citizenship and
Immigration Service seeking lawful permanent residence for both
Nadezda and I.V.  See 8 U.S.C. § 1255a.

As part of this process, Scott executed an "Affidavit of
Support" under § 213A of the Immigration and Nationality Act,
id. § 1182a, also known as a "Form I-864," 8 C.F.R. § 213a.2(a)
(1)(ii).  Under 8 U.S.C. § 1182(a)(4)(C)(ii), an affidavit of
support is required for certain aliens to obtain adjustment of
status to lawful permanent residency, including the spouses of
American citizens and children accompanying their immigrant
parents.  Id. §§ 1151(b)(2)(A)(i)-(ii).  Without the affidavit
(and subject to other exceptions not relevant here), such an
alien can be deemed ineligible for adjustment of status on the
grounds that he or she "is likely at any time to become a public
charge."  Id. § 1182(a)(4)(A).

Accordingly, "to establish that an alien is not excludable
as a public charge," an affidavit of support must be

3

> executed by a sponsor of the alien as a contract . . .
> in which the sponsor agrees to provide support to
> maintain the sponsored alien at an annual income that
> is not less than 125 percent of the Federal poverty
> level during the period in which the affidavit is
> enforceable.

Id. § 1183a(a)(1)(A) (formatting altered).  The affidavit is

enforceable until the alien either becomes a naturalized citizen

of the United States or is credited with having "worked 40

qualifying quarters of coverage as defined under title II of the

Social Security Act."  Id. §§ 1183a(a)(2)-(3).

In September 2008, Scott executed an affidavit of support

naming himself as the sponsor and Nadezda and I.V. as the

sponsored aliens.  The affidavit, completed by filling out an

official Form I-864 provided by the Department of Homeland

Security, states that "by signing this form, you agree to assume

certain specific obligations under the Immigration and

Nationality Act and other Federal laws."  Specifically, in a

section entitled "Sponsor's Contract," the affidavit provides:

> If an intending immigrant becomes a permanent resident
> in the United States based on a Form I-864 that you
> have signed, then, until your obligations under the
> Form I-864 terminate, you must:
>
> --Provide the intending immigrant any support necessary
> to maintain him or her at an income that is at least
> 125 percent of the Federal Poverty Guidelines for his
> or her household size . . .

The affidavit further states that "[y]our obligations under a

Form I-864 will end" on the occurrence of a number of specified

events, including those set forth in §§ 1183a(a)(2)-(3).  In accordance with §§ 1183a(a), however, the affidavit notes that "divorce **does not** terminate your obligations under this Form I-864."  The affidavit also cautions that "[i]f you do not provide sufficient support to the person who becomes a permanent resident based on the Form I-864 that you signed, that person may sue you for this support."

The Montgomerys' relationship began to deteriorate soon after their marriage.  By February 2010, Scott had filed a petition for divorce in the Derry Family Division of the Rockingham County Superior Court.  In re Montgomery, No. 2010-M-99 (N.H. Super. Ct. Fam. Div. Feb. 17, 2010).  Nadezda responded with her own "cross-petition for divorce and other affirmative relief," including alimony for her, child support for I.V., and, for both of them, "support pursuant to . . . the I-864 Affidavit."  Later, after both Scott and Nadezda appeared before the Family Court with counsel, it issued an "Order on Temporary Hearing and Structuring Conference."[2]  In re Montgomery, No. 2010-M-99 (N.H. Super. Ct. Fam. Div. July 21, 2010).

---

[2]Under New Hampshire divorce procedure, the court may issue such decrees for, among other purposes, "[d]etermining the temporary maintenance and custody of any children" and "[o]rdering a temporary allowance to be paid for the support of the other."  N.H. Rev. Stat. Ann. §§ 458:16, I(e)-(f).

The order noted that Nadezda had "represent[ed] that [Scott] signed an Affidavit of Support with the Department of Homeland Security and, as such, he is responsible for supporting [her] and [her] child, [I.V.], during their stay in the United States."[3] Id. at 3.  But the court declined to

> find that [Nadezda's] representation that the Affidavit of Support signed by [Scott] requires the payment of child support for a minor that [Scott] has not adopted, that has a father that is capable of paying support, that has a mother who is capable of paying support and becoming employed full time, as well as the fact that this is a short-term marriage (married for less than two years).

Id. at 4.  Accordingly, the court awarded Nadezda $900 per month in temporary alimony, noting its "expectation that [she] will be gainfully employed prior to the parties [*sic*] final hearing at which time the current alimony award will cease to exist."  Id. at 3.  The court did not order Scott to pay any support for I.V. but continued health insurance payments on his behalf.  Id.

Shortly after this order issued, Scott filed a memorandum with the Family Court to "apprise [it] of [his] obligations to [Nadezda] and [I.V.] pursuant to the Affidavit of Support."  The memorandum argued that, should the Family Court "order support for [Nadezda], it should be done as an enforcement of the Form

---

[3]It does not appear that Nadezda provided the Family Court with a copy of the affidavit of support either prior to or at the temporary hearing.  This court has not been provided with a transcript of the hearing or an otherwise complete record of the Family Court proceedings.

I-864 Affidavit of Support," which the memorandum acknowledged to be "a contract that is legally enforceable" against Scott by Nadezda and I.V.  The memorandum went on to offer a calculation of Scott's obligations to Nadezda and I.V. under the affidavit that would have resulted in no support to them beyond what he was already providing in the form of payments made on their behalf for health insurance and certain other living expenses, and not counting the temporary alimony.[4]

Nadezda then filed a motion "for clarification and reconsideration" of the Family Court's temporary order.  She argued, among other things, that because in "the affidavit of support [Scott] promised to support both for [*sic*] Nadezda and her son [*sic*] at least 125% of the poverty rate," he "should at least be responsible for paying support of child support, alimony, and/or other support of approximately $1,500 per month." The Family Court denied the motion in a margin order on August 23, 2010.  About three months later, Nadezda and I.V. commenced this action, seeking specific performance of the affidavit of support "retroactive to the date [it] was executed, as well as ongoing," together with attorneys' fees and costs.

---

[4]The calculation was based in part on Scott's argument that Nadezda "has an obligation to mitigate losses" by getting a job and that her support should be reduced by what she could reasonably be expected to earn if she did so.

## II.  **Analysis**

## A.  **Younger** abstention

In moving to dismiss this action, Scott argues that this court should abstain from exercising subject-matter jurisdiction under the doctrine set forth in Younger v. Harris, supra.  That case "and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances."  Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982).  Younger abstention is therefore "appropriate when the requested relief would interfere (1) with an ongoing state judicial proceeding; (2) that implicates an important state interest; and (3) that provides an adequate opportunity for the federal plaintiff to advance his federal [claim]."  Rossi v. Gemma, 489 F.3d 26, 34 (1st Cir. 2007).

Scott argues that these criteria are satisfied here because (1) the divorce proceedings are ongoing, (2) they implicate the state's "paramount interest in domestic relations," and (3) they provide an adequate opportunity for the plaintiffs to press their claim to enforce the affidavit of support under 8 U.S.C. § 1183a(e)(1), in light of the fact that both Montgomerys have asked the Family Court to take the affidavit into account in awarding spousal and child support.  The plaintiffs respond that, because the Family Court's temporary order "simply brushed aside

8

the affidavit of support" and "examined the support issue exclusively from the state law perspective," they were not in fact "provided with any meaningful opportunity to present" their federal claim for support under § 1183a(e)(1).

As Scott points out, the Family Court's treatment of the affidavit of support in its temporary order is perhaps unsurprising in light of Nadezda's apparent failure to provide the affidavit to the court before it ruled.  See note 3, supra. In any event, this court need not decide whether the Family Court's ruling indicates that it will not afford the plaintiffs an "adequate opportunity" to present their federal claim in that forum so as to foreclose Younger abstention, due to the absence of another essential prerequisite for that relief--what the court of appeals has called the "threshold issue of 'interference.'" Rossi, 489 F.3d at 35.

A federal-court proceeding "interferes" with a state-court proceeding for Younger purposes when it "either enjoins the state proceeding or has the 'practical effect' of doing so."  Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 70 (1st Cir. 2005).  The plaintiffs' action in this court for specific performance of the affidavit of support will not "interfere" with the divorce proceedings in this way.

Again, the plaintiffs seek only "an award of support payable" by Scott, both retrospectively and prospectively,

together with attorneys' fees and costs.  They do not seek an
injunction against the Family Court proceedings, or any other
relief that would have that effect as a practical matter.  As
discussed <u>supra</u>, Scott's obligations under the affidavit of
support exist independently of his marriage to Nadezda, so
enforcing it will not require this court to countermand the
temporary order--or any other decree the Family Court might
issue--as to the status of the marriage, the disposition of
marital property, or the like.  <u>Cf.</u> <u>Hook v. Henderson</u>, No. 94-
35075, 1995 WL 398849, at *2 (9th Cir. July 7, 1995) (upholding
denial of abstention from suit arising out of one spouse's
promise to convey property to the other because "the primary
issues involved questions of property and contract," not the
parties' marital status).[5]

---

[5]Federal courts have also held that the so-called "domestic
relations" exception generally does not divest them of subject-
matter jurisdiction over tort or contract actions between spouses
or ex-spouses.  <u>See</u>, <u>e.g.</u>, <u>Jagiella v. Jagiella</u>, 647 F.2d 561,
564 (5th Cir. 1981) (citing cases); <u>accord</u> <u>DeMauro v. DeMauro</u>,
115 F.3d 94, 98-99 (1st Cir. 1997) ("The so-called domestic
relations exception does not preclude federal courts from
adjudicating tort actions merely because the parties were married
and are in the process of divorce.") (citing <u>Ankenbrandt v.
Richards</u>, 504 U.S. 689, 704 (1992)).  In any event, the majority
view is that the domestic relations exception divests federal
courts of jurisdiction over cases premised on diversity of
citizenship only, in line with the reasoning of <u>Ankenbrandt</u>.  <u>See</u>
<u>Mandel v. Town of Orleans</u>, 326 F.3d 267, 271 & n.3 (1st Cir.
2003) (citing cases but declining to resolve the issue).  This a
federal question case and, again, neither party has questioned
this court's subject-matter jurisdiction as an initial matter.

This is in contrast to this court's decision in Colassi v. Looper, 2008 DNH 106, on which Scott heavily relies.  There, after the Superior Court preliminarily denied the plaintiff's motion to modify a parenting order to prevent the defendant from moving out of the state with their child, the plaintiff filed a pro se action against both the defendant and the Superior Court in this form, asking this court to, inter alia, "overturn" the Superior Court's order on the theory that it violated his federal constitutional rights.  Id. at 2-4.  This court, invoking Younger abstention sua sponte, ruled that "much of the relief [the plaintiff] [sought] from [it], e.g., overturning or modifying the Superior Court's orders, or enjoining [the child's] relocation despite its approval by that court, would interfere with the proceedings there."  Id. at 5-6.

Here, though, the plaintiffs do not ask this court to "overturn" the Family Court's temporary order, or to enjoin Scott from taking any actions which it authorized.[6]  At most, this action could result in an order requiring Scott to pay support to the plaintiffs in accordance with the I-864.  Scott does not

---

[6]This is also in contrast to Rossi, which Scott invoked at oral argument as support for his "interference" argument.  There, the plaintiffs to the federal action sought an order compelling the clerk of the state court to release funds from the court registry to them, as well as a declaratory judgment that the state court proceeding violated their federal constitutional right to due process.  489 F.3d at 30-32.

argue that this relief would interfere with the support
obligations put in place by the Family Court; to the contrary, he
maintains (as he did in his post-hearing memorandum to the Family
Court) that this relief would simply duplicate those obligations.

As the court of appeals has instructed, however, the simple
existence of "parallel federal and state litigation" does not
justify Younger abstention. Rio Grande, 397 F.3d at 71.  Indeed,
that is true even when the twin lawsuits threaten the
"possibility of inconsistent results in the future." Id.  So any
chance that this court and the Family Court might come to
different conclusions about the enforceability of the affidavit
of support, or the amount it obligates Scott to pay, does not
itself warrant abstention under the Younger doctrine.

Indeed, as the Supreme Court has explained, a "federal
court's disposition of . . . a case may well affect, or for
practical purposes pre-empt . . . a pending state-court action.
But there is no doctrine that the availability or even the
pendency of state judicial proceedings excludes the federal
courts." New Orleans Pub. Serv., Inc. v. Council of City of New
Orleans, 491 U.S. 350, 373 (1989) (dash omitted).  Again, the
mere "pendency of an action in the state court is no bar to
proceedings concerning the same matter in the Federal court
having jurisdiction." ExxonMobil Corp. v. Saudi Basic Indus.
Corp., 544 U.S. 280, 292 (2005).  Thus, Scott's repeated

12

assertions at oral argument that the issues underlying the plaintiffs' claim here are "part and parcel" of the issues being addressed in the Family Court, or that the Family Court is already "dealing with" the affidavit of support--even if accurate--simply do not support Younger abstention.

**B.   Colorado River abstention**

Scott also argues that the plaintiffs initially "chose to insert the claim [to enforce the affidavit of support] into the divorce proceedings" and are now "forum shopping due to dissatisfaction with the rulings of the Derry Family Division." The court of appeals has identified the fact "that the federal action was . . . filed or pursued as a reaction to an adverse state court action" as "a factor that weighs heavily in favor of abstention." Rio Grande, 397 F.3d at 72 (citing Cruz v. Melecio, 204 F.3d 14, 24 (1st Cir. 2000)). But, as Rio Grande teaches, that would be abstention under a different doctrine:  the one set forth in Colorado River Water Conservation District v. United States, supra. So-called "Colorado River abstention" applies to "situations involving the contemporaneous exercise of concurrent jurisdictions . . . by state and federal courts" and "rest[s] on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Id. at 817 (bracketing and quotation marks

13

omitted).  Even putting aside the fact that Scott has not invoked this doctrine by name, "the circumstances permitting abstention under Colorado River for reasons of 'wise judicial administration' are quite 'limited' and indeed 'exceptional,'" Rio Grande, 397 F.3d at 71 (quoting 424 U.S. at 818)), and this case does not fit within that exceedingly narrow category.

The court of appeals has "developed a list of factors--which is not meant to be exclusive--for when Colorado River abstention might be appropriate," id. at 71, including:

> (1) whether either court has assumed jurisdiction over a res; (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

Id. at 71-72 (quoting KPS & Assocs., Inc. v. Designs By FMC, Inc., 318 F.3d 1, 10 (1st Cir. 2003)).  Here, none of these factors weighs heavily, if at all, in favor of abstention.

At the outset, neither this action nor the divorce action implicates in rem jurisdiction, and this action did not arrive here by way of removal, see 28 U.S.C. § 1441, so factors (1) and (8) are inapplicable.  Though Scott is now living in the marital home in Derry, which is also the location of the Family Court, the short distance from there to this court's location in Concord does not equate to "geographical inconvenience" (factor 2).  See

Burns v. Watler, 931 F.2d 140, 147 (1st Cir. 1991) (ruling that
even "a two-hour drive does not denote a degree of inconvenience
that should significantly influence" the abstention question).

As already discussed, this action seeks to enforce Scott's
obligations to the plaintiffs that exist independently of his
marriage to Nadezda.  So allowing the enforcement action to
proceed here while the divorce action proceeds in the Family
Court--on unrelated issues like the status of the marriage and
the disposition of marital property--will not subject the parties
to "piecemeal litigation" (factor 3).  The only area of potential
overlap is between sums this court might order Scott to pay under
the affidavit and sums the Family Court might order him to pay as
spousal or child support, and, as Scott himself suggests, any
discrepancy there can be readily corrected by crediting the
support payments against the payments under the affidavit, or
vice versa (assuming that would be appropriate, an issue this
court does not decide at the moment).  In any event, the fact
that "related issues . . .  would be decided by different courts,
or even [that] two courts would . . . be deciding the same
issues" does not weigh heavily in favor of abstention.  Villa
Marina Yacht Sales, Inc. v. Hatteras Yachts, 915 F.2d 7, 16 (1st
Cir. 1990) (noting that "the routine inefficiency that is the
inevitable result of parallel proceedings" in state and federal
courts is not enough to support abstention).

15

Moreover, there is no question that federal law, specifically 8 U.S.C. § 1183a, controls the plaintiffs' claim to enforce the affidavit of support (factor 5).  As Scott's memorandum to the Family Court reveals, this claim raises a number of issues that must be resolved with reference to the sparse federal case law on this subject or, potentially, as matters of first impression.  Conversely, the § 1183 claim does not appear to implicate any state-law issues.  So this factor also weighs against abstention.  See Rio Grande, 397 F.3d at 72. Indeed, "the presence of federal-law issues must always be a major consideration weighing against surrender" of federal jurisdiction under Colorado River.  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 26 (1983) (footnote omitted).

That brings the court to the remaining considerations, which essentially comprise Scott's argument for abstention (albeit under Younger, not Colorado River):  the order in which the forums obtained jurisdiction (factor 4), the adequacy of the state forum to protect the parties' interests (factor 6), and the vexatious or contrived nature of the federal claim (factor 7). Scott complains that, although it was Nadezda who first raised the § 1183a claim in the Family Court, she subsequently decided "to ignore the state court proceedings and bring a separate action in federal court," which amounts to "forum shopping" and an "abuse of the federal court system."  While there is no

16

disputing Scott's account of the chronology, it cannot justify abstention under the circumstances of this case.

Despite Scott's suggestion to the contrary, it is reasonably clear that the Family Court did not award Nadezda any relief based on the I-864, which it specifically found not to require Scott to support I.V. In re Montgomery, slip op. at 4. In light of that finding, there is also no basis to conclude that the Family Court took the affidavit into account in determining Scott's alimony payments to Nadeza (especially where, as she points out, the court expressed its view that those payments would end once she became "gainfully employed," which does not itself cease Scott's obligations under the affidavit). As already discussed, the Family Court's approach is understandable in light of Nadezda's apparent failure to produce the affidavit before or during the temporary hearing. But after the hearing, the Family Court did receive the affidavit--as well as a memorandum from Scott essentially acknowledging his obligations thereunder to both Nadezda and I.V.--but still denied, without comment, Nadezda's motion to reconsider the temporary order to, among other things, include support for I.V.

This, too, is understandable in light of the Family Court's busy docket and the formidable standard for motions to reconsider. Nevertheless, this ruling furnishes some objective basis for the plaintiffs' concern that the Family Court will not

17

enforce the rights conferred upon them by the affidavit of support under federal law.  So, even if the Family Court cannot be called an "inadequate forum" to secure those rights (factor 6), there is nevertheless enough "room for doubt" on that point to give this court pause over abstaining from jurisdiction. Moses H. Cone Mem'l Hosp., 460 U.S. at 26-28 (instructing that Colorado River abstention should not be used in the face of "any substantial doubt" as to whether "parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues").[7]

Relatedly, the fact that the Family Court did not require Scott to support I.V. despite Scott's acknowledged obligation to do so under the affidavit suggests that this action is neither "vexatious" nor "contrived" (factor 7).  The plaintiffs' understandable desire to obtain the support for I.V. that he had been guaranteed under federal law furnishes "an entirely

---

[7]Furthermore, while Nadezda has attempted to obtain support for I.V. in the Family Court proceedings, I.V. himself is not a party to them, and it is unclear whether he can intervene in them for the purposes of pressing his own claim to enforce the affidavit.  Cf. N.H. Rev. Stat. Ann. § 458:17-a, I (authorizing the appointment of guardians ad litem in divorce proceedings, but only "to represent the interests of the children of the marriage") (emphasis added).  But he can bring that claim here. This situation further counsels against abstention.  Cf. Bunting ex rel. Gray v. Gray, 2 Fed. Appx. 443, 447 (6th Cir. 2001) (finding abstention inappropriate where a state-court divorce action did not provide an adequate forum for a child's claim for money owed her by her stepfather, and citing similar cases).

reasonable explanation for why they would want to [proceed] simultaneously in state and federal court." Rio Grande, 397 F.3d at 72 (finding it "reasonable for [plaintiff] to want the federal courts to devise prospective relief" against defendant, despite a parallel state-court proceeding where that relief could have been sought, "given the federal courts' greater familiarity with the" federal law at issue).  And Scott's frank admission of some responsibility to the plaintiffs under affidavit of support makes it impossible to call their claim here "contrived."

Finally, as Scott emphasizes, the plaintiffs did not commence this action until after the Family Court had rejected Nadezda's claim to support for I.V.  As already noted, the court of appeals has observed that the filing of a federal suit "as a reaction to an adverse state court action" is "a factor that weighs heavily in favor of abstention." Id.  In the cases where the court of appeals has actually found that factor to support abstention, however, the plaintiffs did not repair to the federal forum until the state court had already "entered a final judgment adverse to their interests." Cruz, 204 F.3d at 24; see also Lundborg v. Phoenix Leasing, Inc., 91 F.3d 265, 272 (1st Cir. 1996) (ruling that abstention was proper from a suit "to undo a preexisting, final judgment of a state court").  But here, the Family Court has issued only a temporary order--not a final judgment--on Nadezda's claims for support under the affidavit.

19

Indeed, the Supreme Court has instructed that, in assessing the order in which the forums obtained jurisdiction as part of the Colorado River analysis, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." Moses H. Cone Mem'l Hosp., 460 U.S. at 21. So far as is apparent in the filings from the Family Court that have been provided, those proceedings have not moved beyond the temporary hearing, and, as already discussed, have involved little if any consideration of the affidavit of support. And again, I.V.'s claim to enforce the affidavit on his own behalf is not even before the Family Court. See note 7, supra. This is a far cry, then, from cases where retaining jurisdiction in the federal court would entail a complete "do-over" of state proceedings. Cf. Cruz, 204 F.3d at 24-25 (ordering abstention in light of state-court proceedings that were both more advanced and more comprehensive than the parallel federal court action).

In sum, very few if any of the Colorado River factors cut in favor of abstention here, and even those that arguably do, i.e., the sequence of the actions, or the potentially vexatious effect of the parallel litigation, do not carry much weight under the particular circumstances of this case. More importantly, this court cannot lose sight of the forest for the trees: "[o]nly the clearest of justifications will warrant dismissal" under the

Colorado River abstention doctrine, in light of "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." 424 U.S. at 818-19. Here, where the only potential justification is the fact that a federal claim was previously raised in an ongoing state proceeding, Colorado River abstention is simply not appropriate. See Rio Grande, 397 F.3d at 72; DeMauro, 115 F.3d at 98 ("the Supreme Court has discouraged abstention based solely on the ground that a related state court action may address similar issues"). Nor, as already discussed, is Younger abstention. Scott's motion to dismiss on abstention grounds, even if generously read to invoke both the Younger and Colorado River doctrines, must be denied.

## III. **Conclusion**

For the foregoing reasons, Scott's motion to dismiss[8] is DENIED.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: February 9, 2011

---

[8]Document no. 6.

cc:  Gregory Romanovsky, Esq.
     Ronald L. Abramson, Esq.
     Mary Ann Dempsey, Esq.